1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10                        ----oo0oo----

11

12  BRADLEY BRAZILL, an              NO. CIV. 2:12-1218 WBS GGH
    individual,

13
             Plaintiff,             MEMORANDUM AND ORDER RE:
14                                  MOTION TO DISMISS

15       v.

    CALIFORNIA NORTHSTATE COLLEGE
16  OF PHARMACY, LLC, CALIFORNIA
    NORTHSTATE UNIVERSITY, LLC,
17  and DOES 1 through 10,
    inclusive,
18
             Defendants.
19  _____/

20

21                        ----oo0oo----

22       Plaintiff Bradley Brazill brings this action against

23  defendants California Northstate College of Pharmacy, LLC and

24  California Northstate University, LLC ("College" collectively),

25  arising from defendants' allegedly wrongful conduct related to

26  defendants' termination of plaintiff's employment.  Defendants

27  now move to dismiss the Complaint, with the exception of the

28  fifth claim, for failure to state a claim upon which relief can

                                1

1   be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

2   (Docket No. 5.)

3   I.   <u>Factual and Procedural Background</u>

4           Plaintiff is a 55-year-old licensed pharmacist who owns

5   and operates a pharmacy in Yolo County.  (Compl. ¶ 14 (Docket No.

6   1).)  Plaintiff has been a pharmacist for over 25 years and a

7   professor of pharmacy for over twenty years.  (<u>Id.</u>)  In 2009,

8   defendants hired plaintiff full-time as Chair of the Department

9   for Clinical and Administrative Sciences at the College, a for-

10  profit, unaccredited college located in Rancho Cordova,

11  California.  (<u>Id.</u> ¶ 15.)  Plaintiff alleges that he was hired

12  under a one-year contract that was later extended "up to and

13  including his last day of employment."  (<u>Id.</u> ¶ 16.)  Plaintiff

14  began working for the College in August 2009 and his duties

15  included overseeing the clinical curriculum and evaluating and

16  supervising the clinical teaching staff.  (<u>Id.</u>)  Plaintiff

17  alleges that after his "outstanding 2010 performance review," he

18  received a four percent raise.  (<u>Id.</u>)

19          The College is currently a candidate for accreditation

20  by the Western Association of Schools and Colleges ("WASC").

21  (<u>Id.</u> ¶ 17.)  In October 2010, members of the WASC visited the

22  College to assess its candidacy.  (<u>Id.</u> ¶ 18.)  When WASC members

23  asked plaintiff to give an assessment as to whether the College

24  had appropriate resources to complete its mission, he responded

25  that it did not.  (<u>Id.</u>)  In several follow-up meetings, plaintiff

26  reasserted that the College had insufficient resources and

27  explained that the College's cost-cutting measures put profits

28  before students' education.  (<u>Id.</u>)

1    Plaintiff states that during that same academic year,
2    he began vocally challenging the College administration's tuition
3    practices as illegal and detrimental to the College's
4    accreditation process.  (Id. ¶ 19.)  Plaintiff alleges that the
5    College does not receive federal student aid assistance because
6    it is unaccredited.  (Id. ¶ 17.)  Plaintiff also alleges that he
7    knew, or reasonably believed, that the some of the College's
8    tuition practices violated federal law.  (Id. ¶ 20.)
9    Specifically, plaintiff alleges that the College participated in
10   a scheme in which it encouraged students to apply for enrollment
11   at an accredited school in Michigan, apply for excess student
12   loans, and then use the excess loan money to pay for the
13   College's tuition.  (Id. ¶ 19.)  Plaintiff believed that this
14   practice violated federal provisions requiring that student loans
15   be used by students only at "eligible institution[s]."  (Id.)

16        Plaintiff alleges that the President of the College,
17   Alvin Cheung, discovered what plaintiff had told WASC members
18   during their accreditation investigation and that plaintiff had
19   been complaining about the College's tuition practices.  (Id. ¶
20   20.)  Plaintiff alleges that from that point forward, President
21   Cheung and the College administration treated him hostilely and
22   told him that he was not considered a "team player."  (Id.)
23   Plaintiff alleges that the administration implied it was
24   displeased with plaintiff's critical comments to the WASC and his
25   disapproval of its tuition practices.  (Id.)  Plaintiff further
26   alleges that the administration decried his "old school ways of
27   thinking," and "implied that it would seek to replace Plaintiff
28   with someone with a younger, more modern perspective . . . ."

3

1   (Id.)

2          On July 14, 2011, the administration notified plaintiff
3   that President Cheung, Dean David Hawkins, and the Director of
4   Human Resources, Yasmin Vera, wished to meet with him to discuss
5   a "conflict of interest" issue.  (Id. ¶ 21.)  Plaintiff alleges
6   that he met with Ms. Vera and Vice President Norman Fong, who
7   advised him that he could resign or be terminated.  (Id.)  Ms.
8   Vera allegedly stated that plaintiff was being terminated because
9   he had allowed faculty members to work in his retail pharmacy.
10  (Id.)  When plaintiff advised them that the Dean had expressly
11  authorized this practice, Vice President Fong allegedly responded
12  that it did not matter and that plaintiff was terminated.  (Id.)

13         Plaintiff filed this action on May 7, 2012, alleging
14  six causes of action under federal and state law: (1) age
15  discrimination under the Age Discrimination in Employment Act
16  ("ADEA"), 29 U.S.C. §§ 621-634; (2) age discrimination under the
17  California Fair Employment and Housing Act ("FEHA"), Cal. Gov't
18  Code §§ 12900-12996; (3) retaliation under the False Claims Act
19  ("FCA"), 31 U.S.C. § 3730(h); (4) retaliation under California
20  Labor Code § 1102.5; (5) wrongful termination (Cal. Gov't Code §§
21  12900-12996; 31 U.S.C. § 3730(h); Cal. Lab. Code § 1102.5); and
22  (6) breach of employment contract.  Defendants' motion to dismiss
23  does not include claim five for wrongful termination.

24  II.  Request for Judicial Notice

25         A court may take judicial notice of facts "not subject
26  to reasonable dispute" because they are either "(1) generally
27  known within the territorial jurisdiction of the trial court or
28  (2) capable of accurate and ready determination by resort to

4

sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  The court may take judicial notice of matters of public record or of documents whose contents are alleged in the complaint and whose authenticity is not questioned.  <u>Lee v. City of L.A.</u>, 250 F.3d 668, 688-89 (9th Cir. 2001).

Plaintiff has requested that the court take judicial notice of: (1) a copy of the California Department of Industrial Relation's webpage describing its Retaliation Complaint Unit; and (2) a copy of the California Department of Industrial Relation's webpage describing the filing of a retaliation/discrimination complaint.  (Docket No. 6-2).)  Because the information appears on an official government website, its accuracy is not reasonably in dispute.  <u>See, e.g.</u>, <u>Edejer v. DHI Mortg. Co.</u>, No. 09-1302, 2009 WL 1684714, at *4 (N.D. Cal. June 12, 2009); <u>Piazza v. EMPI, Inc.</u>, No. 07-954, 2009 WL 590494, at *4 (E.D. Cal. Feb. 29, 2008); <u>see also</u> <u>Denius v. Dunlap</u>, 330 F.3d 919, 926-27 (7th Cir. 2003) (taking judicial notice of information on official government website).  Accordingly, the court will take judicial notice of these documents.

III. <u>Discussion</u>

To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009), and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between

possibility and plausibility of entitlement to relief.'" Id.
(quoting Twombly, 550 U.S. at 557).  In deciding whether a
plaintiff has stated a claim, the court must accept the
allegations in the complaint as true and draw all reasonable
inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416
U.S. 232, 236 (1974), overruled on other grounds by Davis v.
Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322
(1972).

    A.   Age Discrimination (Claims One and Two)

        The ADEA makes it illegal for an employer "to fail or
refuse to hire . . . any individual [age forty or above] . . .
because of such individual's age."  29 U.S.C. § 623(a)(1).
Similarly, FEHA makes it illegal for an employer "because of the
. . . age . . . of any person, to refuse to hire or employ the
person."  Cal. Gov't Code § 12940(a).  Plaintiff brings age
discrimination claims under the disparate treatment theory of
both the ADEA and FEHA.

        To establish a prima facie case of age discrimination
under the disparate treatment theory under the ADEA, plaintiff
must show that he: (1) was a member of the protected class (aged
40 or older); (2) was performing his job satisfactorily; (3) was
discharged; and (4) was replaced by a substantially younger
employee with equal or inferior qualifications or some other
circumstances that would lead to an inference of age
discrimination.  Reeves v. Sanderson Plumbing Prods., Inc., 530
U.S. 133, 142 (2000); Rose v. Wells Fargo & Co., 902 F.2d 1417,
1421 (9th Cir. 1990).  California courts look to federal
precedent when interpreting FEHA because of its similarity to the

ADEA.  Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 354 (2000).

To plead a claim for Age Discrimination under FEHA, a plaintiff

must satisfy the same four-part test as the ADEA.  Id.  The court

will therefore consider claims one and two together.

As to the fourth factor, a plaintiff must show that age

was the basis of the employer's adverse decision.  Gross v. FBL

Fin. Servs., Inc., 557 U.S. 167, 176, (2009).  The Ninth Circuit

has also held "that the failure to prove replacement by a younger

employee is 'not necessarily fatal' to an age discrimination

claim where the discharge results from a general reduction in the

work force due to business conditions."  Rose, 902 F.2d at 1421;

see also Ewing v. Gill Indus., Inc., 3 Cal. App. 4th 601, 610-11

(6th Dist. 1992).  A plaintiff may instead meet his burden

"through circumstantial, statistical, or direct evidence that the

discharge occurred under circumstances giving rise to an

inference of age discrimination."  Rose, 902 F.2d at 1421; see

also Reeves, 530 U.S. at 132; Nesbit v. Pepsico, Inc., 994 F.2d

703, 705 (9th Cir. 1993).

Here, plaintiff alleges that the College administration

"disparaged his 'old school ways and thinking.'" (Compl. ¶ 20.)

Although some courts have held that the term "old-school" could

suggest age discrimination when combined with other evidence or

allegations, the term alone is insufficient to support an

inference of age discrimination.  See Craig v. Sw. Airlines, Co.,

2007 WL 4105980, at *5 (Jan. 23, 2007) (finding performance

appraisal that plaintiff had an "old school leadership style"

insufficient); see also Nesbit, 994 F.2d at 705; Nidds v.

Schindler Elevator Corp., 113 F.3d 912, 918-19 (9th Cir. 1996)

(holding that employer's use of the phrase "old timers" did not

support inference of discriminatory motive); Alexander v. San

Diego Unified Sch. Dist., No. 08-CV-01814, 2009 WL 3299813, at *7

(S.D. Cal. Oct. 13, 2009).  Similarly, plaintiff's allegation

that the administration "implied that it would seek to replace

Plaintiff with someone with a younger, more modern perspective,"

(Compl. ¶ 20), is conclusory and not a recitation of defendants'

actual statement.

         Plaintiff's allegations of suggestive comments about

his age along with mere recitation of the elements fall short of

supporting an inference of discrimination.  In Nesbit, comments

made by the plaintiff's employer that "[we] don't necessarily

like grey hair" and "[w]e don't want unpromotable [sic] fifty-

year olds around" were found insufficient to satisfy the fourth

element of an ADEA claim.  Nesbit, 994 F.2d at 705.  The comments

made by the employer in Nesbit were far more suggestive than

plaintiff's allegations in this case.

          The replacement of a slightly younger employee will

not give rise to a successful ADEA claim.  The replacement must

be substantially younger.  Maxfield v. Sinclair Int'l, 766 F.2d

788, 793 (3d Cir. 1985); see also Venuti v. Superior Court, 232

Cal. App. 3d 1463 (2d Dist. 1991).  Plaintiff merely alleges, in

conclusory fashion, that "[d]efendants intentional terminated

Plaintiff, because of his age, and replaced him with a

substantially younger employee with equal or inferior

qualifications . . . ."  (Compl. ¶¶ 24, 28.)  "A pleading that

offers labels and conclusions or a formulaic recitation of the

elements of a cause of action will not do."  Iqbal, 556 U.S. at

1    678 (quotation marks omitted).  The complaint offers no reference

2    to the name, age, or qualifications of plaintiff's replacement

3    and plaintiff, therefore, does not sufficiently allege that he

4    was replaced by a substantially younger employee.  Drawing all

5    reasonable inferences in favor of plaintiff, the court finds that

6    the College's alleged remarks fall short of showing a plausible

7    inference of age discrimination.  Accordingly, the court will

8    grant defendants' motion to dismiss plaintiff's first and second

9    claims for age discrimination.

10          B.   Retaliation Under the FCA (Claim Three)

11          The False Claims Act was enacted "with the purpose of

12   [combating] widespread fraud by government contractors who were

13   submitting inflated invoices and shipping faulty goods to the

14   government."  United States ex rel. Hopper v. Anton, 91 F.3d

15   1261, 1265-66 (9th Cir. 1996).  To this end, the FCA creates

16   liability for any person who, inter alia, conspires to or

17   "knowingly presents, or causes to be presented, a false or

18   fraudulent claim for payment or approval" to an officer or

19   employee of the United States.  31 U.S.C. § 3729(a)(1)(A), (C).

20          The FCA protects employees from being "discharged,

21   demoted, . . . or in any other manner discriminated against in

22   the terms and conditions of employment . . . because of lawful

23   acts done by the employee . . . in furtherance of an [FCA] action

24   . . . ."  31 U.S.C. § 3730(h).  "An FCA retaliation claim

25   requires proof of three elements: '(1) the employee must have

26   been engaging in conduct protected under the Act; (2) the

27   employer must have known that the employee was engaging in such

28   conduct; and (3) the employer must have discriminated against the

                                    9

employee because of her protected conduct.'" <u>United States ex</u>
<u>rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.</u>, 637 F.3d 1047, 1060
(9th Cir. 2011) (quoting <u>Hopper</u>, 91 F.3d at 1269).  Defendants
argue that plaintiff was not engaging in conduct that was
protected under the FCA.

　　　　　Section 3730(h) only protects employees who have acted
"in furtherance of an action" under the FCA.  Actions taken "in
furtherance" include investigation for, initiation of, testimony
for, or assistance in an action filed or to be filed, 31 U.S.C.
§ 3730(h), and the text is interpreted broadly by courts,
<u>McKenzie v. Bell S. Telecomm., Inc.</u>, 219 F.3d 508, 513-14 (6th
Cir. 2000).  "Specific awareness of the FCA is not required," but
"the plaintiff must be investigating matters which are
calculated, or reasonably could lead, to a viable FCA action."
<u>Hopper</u>, 91 F.3d at 1269 (citing <u>Neal v. Honeywell Inc.</u>, 33 F.3d
860, 864 (7th Cir. 1994)).  Investigation into an employer's non-
compliance with state or federal regulations is insufficient to
state a claim for retaliation under the FCA.  <u>See</u> <u>id.</u>; <u>United</u>
<u>States ex rel. Yesudian v. Howard Univ.</u>, 153 F.3d 731, 740 (D.C.
Cir. 1998).  "To be covered by the False Claims Act, the
plaintiff's investigation must concern 'false or fraudulent'
claims." <u>Yesudian</u>, 153 F.3d at 740.

　　　　　In this case, the Complaint does not allege that
plaintiff was engaged in any actions related to false or
fraudulent claims by the College.  Plaintiff only alleges that he
"challenged the administration" for "tuition practices that he
believed to be illegal and had the potential to hurt the
accreditation process." (Compl. ¶ 19.)  Plaintiff's allegations

only suggest that he was attempting to get the College to comply
with federal law and meet accreditation standards, not that he
was trying to recover money for the government or investigating
fraud claims.  Accordingly, the court will grant defendants'
motion to dismiss plaintiff's claim for retaliation under the
FCA.

C.   Retaliation Under California Labor Code § 1102.5 (Claim
     Four)

The "rule of exhaustion of administrative remedies is
well established in California jurisprudence . . . ."  Campbell
v. Regents of the Univ. of Cal., 35 Cal. 4th 311, 321 (2005).
The essence of that rule is that "where an administrative remedy
is provided by statute, relief must be sought from the
administrative body and this remedy exhausted before the courts
will act."  Id.  (quoting Abelleira v. District Court of Appeal,
17 Cal. 2d 280, 292 (1941)).  Exhaustion of administrative
remedies is a "jurisdictional prerequisite to resort to the
courts," not a matter of judicial discretion.  See Johnson v.
City of Loma Linda, 24 Cal. 4th 61, 70 (2000); Palmer v. Regents
of the Univ. of Cal., 107 Cal. App. 4th 899, 904 (2003) (same, in
the context of FEHA); George Arakelian Farms, Inc. v. Agric.
Labor Relations Bd., 40 Cal. 3d 654 (1985) (same, in the context
of challenging an adverse labor board decision); Abelleira, 17
Cal. 2d at 293 (citing Myers v. Bethlehem Shipbuilding Corp., 303
U.S. 41 (1938)) (National Labor Relations Board); Prentis v. Atl.
Coast Line, 211 U.S. 210 (1908) (rate orders); Porter v.
Investors' Syndicate, 286 U.S. 461, 468 (1932) (investment
commissioners and permit of investment company); Gorham Mfg. Co.

11

1   v. State Tax Comm'n, 266 U.S. 265 (1924) (tax board)).

2        Plaintiff's fourth cause of action alleges violation of
3   California Labor Code section 1102.5.  Section 1102.5 is a
4   "whistle-blower" protection statute, intended to prevent
5   employees from being restrained from, or retaliated against for,
6   reporting wrongdoing to the appropriate authorities.  Section
7   1102.5's statutory scheme contains a remedial provision that
8   allows discharged employees to file a complaint before the
9   California Labor Commissioner pursuant to California Labor Code
10  section 98.7.  Cal. Lab. Code § 98.6(b).  Section 98.7 provides
11  that "[a]ny person who believes that he or she has been
12  discharged or otherwise discriminated against in violation of any
13  law under the jurisdiction of the Labor Commissioner may file a
14  complaint with the division within six months after the
15  occurrence of the violation."  The fact that this administrative
16  remedy is neither mandatory nor exclusive does not abrogate the
17  exhaustion requirement.  See Neveu v. City of Fresno, 392 F.
18  Supp. 2d 1159, 1179-80 (E.D. Cal. 2005); Campbell, 35 Cal. 4th at
19  333.

20        In Campbell, the California Supreme Court unanimously
21  held that even though section 1102.5 is silent as to any
22  requirement for administrative exhaustion, "the past 60 years of
23  California law on administrative remedies" nevertheless compelled
24  the conclusion that a person bringing a claim under the section
25  is subject to the exhaustion requirement.  35 Cal. 4th at 329.
26  As plaintiff correctly points out, however, the particular
27  administrative remedy process that Campbell found to be
28  applicable was the employer's internal grievance procedures, not

a complaint filed with the Labor Commissioner.  "While <u>Campbell</u>
may not have reached section 98.7 in light of the plaintiff's
failure to exhaust even internal administrative grievance
procedures, its reasoning is fully applicable to exhaustion
requirements under the Labor Code, whether or not internal
grievance procedures may also be at issue in a particular case."
<u>Reynolds v. City & Cnty. of S.F.</u>, No. C 09-0301, 2011 WL 4808423,
at *1 (N.D. Cal. Oct. 11, 2011).  Consistent with <u>Campbell</u> and
section 98.7, this court has previously held that plaintiffs
alleging claims under section 1102.5 must first exhaust their
administrative remedies.  <u>See</u> <u>Lund v. Leprino Foods Co.</u>, No. Civ.
S-06-0431-WBS, 2007 WL 1775474, at *3-4 (E.D. Cal. June 20, 2007)
(citing <u>Neveu</u>, 392 F. Supp. 2d at 1180; <u>Campbell</u>, 35 Cal. 4th at
333).

Plaintiff cites to the decision by Judge Wanger in
<u>Creighton v. City of Livingston</u> ("<u>Creighton II</u>"), No. Civ. F-08-
1507-OWW, 2009 WL 3245825 (E.D. Cal. Oct. 07, 2009), to argue
that <u>Campbell</u> is not applicable in this case.  Upon a motion for
reconsideration, in <u>Creighton II</u> Judge Wanger observed that the
decisions he had relied upon in dismissing the plaintiff's claim
in <u>Creighton I</u> "were all federal district court decisions relying
on <u>Campbell</u> to conclude that exhaustion of administrative
remedies is required before the Labor Commissioner."  <u>Id.</u> at *12.
Reviewing California precedents and distinguishing <u>Campbell</u>,
Judge Wanger held in <u>Creighton II</u> that exhaustion of
administrative remedies was not required under section 1102.5.
<u>See</u> <u>id.</u>

In this court's view, <u>Creighton II</u> is an aberration as

13

"federal district courts addressing this issue have almost uniformly agreed that a plaintiff alleging a violation of section 1102.5 is required to allege exhaustion of administrative remedies with the Labor Commissioner before bringing suit." Hanford Exec. Mgmt. Emp. Ass'n v. City of Hanford, No. 1:11-cv-00828-AWI, 2012 WL 603222, at *17 (E.D. Cal. Feb. 23, 2012) (citing cases); see also LaTourelle v. Barber, No. Civ S-10-2667-MCE-CMF, 2012 WL 218952, at *8 (E.D. Cal. Jan. 24, 2012); Reynolds, 2011 WL 4808423, at *1; Dolis v. Bleum USA, Inc., No. C11-2713, 2011 WL 4501979, at *2 (N.D. Cal. Sept. 28, 2011); Chacon v. Housing Auth. of Cnty. of Merced, No. 1:10-cv-2416-AWI-GSA, 2011 WL 2621313, at *4 (E.D. Cal. June 29, 2011) (FNR); Carter v. Dep't of Corr.-Santa Clara Cnty., No. C 09-2413, 2010 WL 2681905, at *9-10 (N.D. Cal. July 6, 2010); Bowman v. Yolo County, No. 2:08-cv-00498-GEB, 2008 WL 3154691, at *1-2 (E.D. Cal. Aug. 4, 2008); Neveu, 392 F. Supp. 2d at 1180 (J. Wanger).

Accordingly, the court will grant defendants' motion to dismiss plaintiff's claim for retaliation under section 1102.5.

D.   Breach of Employment Contract

To state a claim for breach of contract under California law, a plaintiff must allege (1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance of the contract; (3) defendant's breach of the contract; and (4) resulting damages.[1]   Armstrong Petroleum Corp.

---

[1]   The required elements for pleading a breach of employment contract claim are the same as the elements for general breach of contract actions.  Wise v. S. Pac. Co., 223 Cal. App. 2d 50, 59 (1963), overruled on other grounds by Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503 (1994).

v. Tri-Valley Oil & Gas Co., 116 Cal. App. 4th 1375, 1390 (5th

Dist. 2004).  Plaintiff alleges that he was a contract employee

and that defendants breached the employment contract when they

terminated his employment without cause.[2]  (Compl. ¶ 46.)

Under California law, employees and employers are

presumed to be engaged in an at-will relationship.  Werner v. Am.

Int'l Grp., Inc., 201 F.3d 446 (9th Cir. 1999).  California Labor

Code section 2922 provides that "[a]n employment, having no

specified term, may be terminated at the will of either party on

notice to the other."  Cal. Lab. Code § 2922; see also Guz, 24

Cal. 4th at 335.  Employment for a "specified term" means an

employment for a period greater than one month.  Cal. Lab. Code

§ 2922.  California law provides that "[a]n employment for a

specified term may be terminated at any time by the employer in

case of any willful breach of duty by the employee in the course

---

[2]    Defendants attempt to submit an At-Will Acknowledgment signed by plaintiff to demonstrate that the employment relationship was in fact at-will. (Ruzicka Decl. Ex. A (Docket No. 5-2).)  When deciding a motion to dismiss, a court may not ordinarily consider material other than the facts alleged in the complaint.  Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996) ("A motion to dismiss . . . must be treated as a motion for summary judgment . . . if either party . . . submits materials outside the pleadings in support or opposition to the motion, and if the district court relies on those materials.").  "A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006).  Under the "incorporation by reference doctrine," the court may consider materials necessarily relied upon in the complaint even if the complaint does not expressly mention them.  Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010) (citing Intri-Plex Techs., Inc. v. Crest Grp., Inc., 499 F.3d 1048, 1052 (9th Cir. 2007)).  Here, the Complaint does not explicitly refer to the At-Will Acknowledgment, nor is it integral to plaintiff's claims. The court further declines to treat defendants' motion as a motion for summary judgment in order to consider the document.

of his employment, or in case of his habitual neglect of his duty or continued incapacity to perform it."  Cal. Lab. Code § 2924. Section 2924, however, does not limit the parties' ability to define the contract terms creating an employment relationship. See Guz, 24 Cal. 4th at 335-36.

Plaintiff's only allegation regarding the details of his employment agreement was that he "began his employment . . . under a one-year contract, which was later extended up to and including his last day of employment."  (Compl. ¶ 16.)  Plaintiff does not specify whether his employment agreement was oral or written, whether there was an explicit good cause provision, or what the terms of his contract extension were.  Without attaching a copy of the employment agreement to the complaint, or allegations containing specific details regarding its contents, plaintiff's allegations fail to establish that plaintiff performed under the contract or that defendants breached the contract.  Accordingly, the court will grant defendants' motion to dismiss plaintiff's claim for breach of employment contract.

IT IS THEREFORE ORDERED that defendants' motion to dismiss claims one, two, three, four, and six be, and the same hereby is, GRANTED.

Plaintiff has twenty days from the date of this Order to file an amended complaint, if he can do so consistent with this Order.[1]

---

[1]     The only claim remaining at this time is plaintiff's fifth claim for wrongful termination in violation of public policy.  Because plaintiff brings his wrongful termination claim based on violations of both state and federal law, the claim is insufficient to establish federal jurisdiction.  See Long v. Bando Mfg. of Am., Inc., 201 F.3d 754, 760 (6th Cir. 2000)

DATED:   August 2, 2012

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

_____

(finding no federal jurisdiction over a state wrongful
termination claim based on alleged violations of the public
policy expressed in federal statutes because the complaint also
put forth public policy violations based on state statutes);
Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 818 (4th Cir. 2004)
(finding no federal jurisdiction over a wrongful termination
claim based on alleged violations of the First Amendment of the
United States Constitution and the laws of South Carolina because
the plaintiff also asserted a state law-based theory under which
a wrongful termination claim could supported); Willy v. Coastal
Corp., 855 F.2d 1160, 1171 (5th Cir. 1988) ("[I]n this Texas
common law wrongful discharge case, the role of issues of federal
law is more collateral than in the forefront.  Further, other
issues of Texas law are substantially implicated in all theories
of the wrongful discharge claim."); Drake v. Cheyenne Newspapers,
Inc., 842 F. Supp. 1403, 1412 (D. Wyo. 1994) ("[T]he Court could
completely ignore any reference to the First Amendment without
affecting plaintiffs' chance of recovery because the plaintiffs
could rely on the Wyoming Constitution . . . as their source of
public policy."); Gardiner v. St. Croix Dist. Governing Bd. Of
Directors, --- F. Supp. 2d ----, No.2012-027, 2012 WL 1153286, *7
(D.V.I. Mar. 30, 2012) (dismissing a wrongful termination claim
that cited both the Virgin Islands Wrongful Discharge Act and the
Fourteenth Amendment); Bonaquide v. Reg'l Sch. Dist. No. 6, 2010
WL 3062137, at *4-5 (D. Conn. July 26, 2012).  Unless plaintiff
amends his complaint to state a federal claim, it is the court's
intention to dismiss under 28 U.S.C. 1367(c)(3).

17