UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| BRADLEY BRAZILL, | NO. CIV. 2:12-1218 WBS GGH |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER RE: MOTION TO DISMISS |
| CALIFORNIA NORTHSTATE COLLEGE OF PHARMACY, LLC, CALIFORNIA NORTHSTATE UNIVERSITY, LLC, and DOES 1 through 10, inclusive, | |
| Defendants. | |

----oo0oo----

Plaintiff Bradley Brazill brings this action against defendants California Northstate College of Pharmacy, LLC, and California Northstate University, LLC ("College" collectively), arising from defendants' allegedly wrongful conduct related to defendants' termination of plaintiff's employment. Defendants now move to dismiss the First Amended Complaint ("FAC") for failure to state a claim upon which relief can be granted

1

pursuant to Federal Rule of Civil Procedure 12(b)(6).

I.  Factual and Procedural Background

Plaintiff is a fifty-five-year-old licensed pharmacist who owns and operates a pharmacy in Yolo County. (FAC ¶ 14 (Docket No. 10).) Plaintiff has been a pharmacist for over twenty-five years and a professor of pharmacy for over twenty years. (Id.) In August 2009, defendants hired plaintiff full-time as Chair of the Department for Clinical and Administrative Sciences at the College, a for-profit, unaccredited college located in Rancho Cordova, California. (Id. ¶ 15.) Plaintiff alleges that he was hired under a one-year contract that was later extended "up to and including his last day of employment." (Id. ¶ 18.) Plaintiff alleges that after his "outstanding 2010 performance review," he received a four percent performance raise. (Id.)

During plaintiff's employment, the College was a candidate for accreditation by the Western Association of Schools and Colleges ("WASC"). (Id. ¶ 19.) In October 2010, members of WASC visited the College to assess its candidacy. (Id. ¶ 20.) When WASC members asked plaintiff to give an assessment as to whether the College had appropriate resources to complete its mission, he responded that it did not. (Id.) In several follow-up meetings, plaintiff reasserted that the College had insufficient resources and explained that the College's cost-cutting measures put profits before students' education. (Id.)

Plaintiff states that during that same academic year, he confronted the College administration regarding its tuition practices. (Id. ¶ 21.) He alleges that he "repeatedly and

2

emphatically" told Dean David Hawkins that the practices were "fraud" that could subject the College to "civil and criminal sanctions from the federal government." (Id.)

With respect to the College's tuition practices, plaintiff alleges that the College does not receive federal student aid assistance because it is unaccredited. (Id. ¶ 25.) Instead, plaintiff alleges, the College participates in a scheme in which it encouraged students to apply for enrollment at an accredited school in Michigan, apply for excess student loans, and then use the excess loan money to pay for the College's tuition. (Id. ¶ 24.)

More specifically, plaintiff alleges that at Vice President Norman Fong's urging, some students certified to the U.S. Department of Education ("DOE") as part of their federal student aid applications that their aid would be used only for attendance at an "eligible institution." (Id. ¶ 28.) In fact, however, the students knew that the aid would be used at a "non-eligible institution," the College. (Id.) Plaintiff further alleges that the DOE relied on the students' written certifications to authorize disbursement of the student aid. (Id.) Plaintiff allegedly believed that this practice violated federal provisions requiring that student loans be used by students only at "eligible institution[s]." (Id. ¶ 26.)

Plaintiff alleges that the President of the College, Alvin Cheung, discovered what plaintiff had told WASC members during their accreditation investigation and that plaintiff had been complaining that the College's tuition practices constituted "fraud." (Id. ¶ 30.) Plaintiff alleges that from that point

3

forward, President Cheung and the College administration treated him hostilely and told him that he was not considered a "team player." (Id. ¶ 31.)  President Cheung allegedly told plaintiff that "he preferred working with 'younger people' who could think 'outside the box;'" decried plaintiff's "old school ways of thinking;" and said that plaintiff should be replaced with someone "'younger,' who had a more modern perspective on tuition payment practices." (Id.)  Finally, plaintiff alleges that the administration implied that it was displeased with plaintiff's critical comments to the WASC and his disapproval of its tuition practices. (Id.)

On July 14, 2011, the administration notified plaintiff that President Cheung, Dean David Hawkins, and the Director of Human Resources, Yasmin Vera, wished to meet with him to discuss a "conflict of interest" issue. (Id. ¶ 32.)  Plaintiff alleges that he met with Ms. Vera and Vice President Fong, who advised him that he could resign or be terminated. (Id. ¶ 33.)  Ms. Vera allegedly stated that plaintiff was being terminated because he had allowed faculty members to work in his retail pharmacy. (Id.)  When plaintiff advised them that the Dean had expressly authorized this practice, Vice President Fong allegedly responded that it did not matter and that plaintiff was terminated. (Id.)

After plaintiff's termination, the College allegedly replaced him with Sonya Frausto, an assistant professor at the College, who is thirty-six years old. (Id. ¶ 35.)  Plaintiff alleges that apart from community pharmacy practice, Dr. Frausto does not have the same breadth of experience that he has. (Id. ¶¶ 36, 37.)

4

After the court granted defendants' motion to dismiss, (Docket No. 9), plaintiff filed his FAC and now alleges four causes of action under federal and state law: (1) age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634; (2) age discrimination under the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12900-12996; (3) retaliation under the False Claims Act ("FCA"), 31 U.S.C. § 3730(h); and (4) wrongful termination on the basis of violations of FEHA and federal law, 29 U.S.C. §§ 621-634, 31 U.S.C. § 3730(h).  Defendants now move to dismiss all claims for failure to state a claim under Rule 12(b)(6).  (Docket No. 12.)

II.  Discussion

To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).  In deciding whether a plaintiff has stated a claim, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322

5

1  (1972).

2       A.   Age Discrimination (Claims One and Two)

3            In the wake of the Supreme Court's decision in <u>Gross v. FBL Financial Services, Inc.</u>, 557 U.S. 167 (2009), courts have considered whether a plaintiff alleging age discrimination in violation of the ADEA must plead that age is the "but for" cause of the adverse employment action. In <u>Gross</u>, the Court held that the ADEA does not authorize a mixed-motives age discrimination claim. <u>Id.</u> at 175. Instead, a plaintiff must prove that "but for" the plaintiff's age the employer would not have taken the adverse action. <u>Id.</u> at 176. This court joins the consensus among district courts finding that <u>Gross</u>'s application is limited to a plaintiff's burden of persuasion and does not preclude a plaintiff from pleading alternate theories for an adverse employment action. See, e.g., <u>Fagan v. U.S. Carpet Installation, Inc.</u>, 770 F. Supp. 2d 490, 495 (E.D.N.Y. 2011) (holding that after <u>Gross</u> a plaintiff is not required to plead that age discrimination is the "but for" cause of his termination); <u>Prisco v. Methodist Hosp.</u>, No. Civ. 10-3141, 2011 WL 1288678, at *3-4 (E.D. Pa. Apr. 4, 2011) (holding that <u>Gross</u> does not prevent a plaintiff from asserting multiple discrimination claims in the same action); <u>Ries v. Winona Cnty.</u>, No. Civ. 10-1715 JNE JJK, 2010 WL 3515722, at *10 (D. Minn. July 28, 2010) (holding that <u>Gross</u> "was not a case involving the sufficiency of an ADEA complaint" and does not preclude plaintiffs bringing ADEA claims from pleading alternate theories of relief); <u>Cartee v. Wilbur Smith Assocs., Inc.</u>, No. Civ. A3:08-4132, 2010 WL 1052082, at *3-4 (D.S.C. Mar. 22, 2010) (finding that <u>Gross</u> is not applicable to

6

a judgment on the pleadings).[1]

The Ninth Circuit's recent determination to continue to apply the McDonnell Douglas burden-shifting evidentiary framework, see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), in ADEA cases also counsels in favor of limiting Gross's application to the determination of plaintiff's burden of persuasion at trial, see Shelley v. Geren, 666 F.3d 599, 607 (9th Cir. 2012). The Shelley court reasoned that the framework is used only at the summary judgment stage to shift the burden of production and would not affect the showing required by Gross at trial. Id. Likewise, plaintiff's allegations of inconsistent theories at the pleading stage do not affect his ultimate burden of proving that age was the cause of the employer's adverse decision. See Riley v. Vilsack, 665 F. Supp. 2d 994, 1006 (W.D. Wis. 2009) ("Gross . . . had nothing to do with pleading, but rather the proper standard of proof under the ADEA. . . . It is difficult to think of allegations that would be sufficient under Rule 8 to show that age was a 'motivating factor' for a decision but insufficient to show that age was the 'but for' reason.").

Moreover, reading Gross to change the pleading standard under the ADEA would conflict with Federal Rules of Civil Procedure 8(d)(2) and (3). These rules allow for the pleading of multiple and inconsistent claims. See Fed. R. Civ. Pro. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or

---

[1] Defendants cite no cases, and the court finds none, holding that Gross precludes alleging alternative theories at the pleading stage.

defense or in separate ones."); id. Rule 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); Prisco, 2011 WL 1288678, at *3 (noting that "all of the cases addressing the issue at the pleading phase have concluded that Gross should not affect Federal Rules of Civil Procedure 8(d)(2) and (3), which allow pleading of alternative and inconsistent claims"). Given the Ninth Circuit's holding in Shelley and the countervailing provisions of the Rules, it would be remiss to apply a holding regarding the burden of persuasion in ADEA cases to the issue of the sufficiency of an ADEA complaint.

The ADEA makes it illegal for an employer "to fail or refuse to hire . . . any individual [age forty or above] . . . because of such individual's age." 29 U.S.C. § 623(a)(1). Similarly, FEHA makes it illegal for an employer "because of the . . . age . . . of any person, to refuse to hire or employ the person." Cal. Gov't Code § 12940(a). Plaintiff brings age discrimination claims under the disparate treatment theory of both the ADEA and FEHA.

To establish a prima facie case of age discrimination under the disparate treatment theory under the ADEA, plaintiff must show that he: (1) was a member of the protected class (aged 40 or older); (2) was performing his job satisfactorily; (3) was discharged; and (4) was replaced by a substantially younger employee with equal or inferior qualifications or some other circumstances that would lead to an inference of age

discrimination.[2]  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000); Rose v. Wells Fargo & Co., 902 F.2d 1417, 1421 (9th Cir. 1990).  California courts look to federal precedent when interpreting FEHA because of its similarity to the ADEA.  Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 354 (2000).  To plead a claim for Age Discrimination under FEHA, a plaintiff must satisfy the same four-part test as the ADEA.  Id.  The court will therefore consider claims one and two together.

As to the fourth factor, the replacement of a slightly younger employee will not give rise to a successful ADEA claim.[3]  The replacement must be substantially younger.  Maxfield v. Sinclair Int'l, 766 F.2d 788, 793 (3d Cir. 1985); see also Venuti v. Superior Court, 232 Cal. App. 3d 1463 (2d Dist. 1991).  The

---

[2] The Ninth Circuit recently reaffirmed the principle that "[a] plaintiff in an ADEA case is not required to plead a prima facie case of discrimination in order to survive a motion to dismiss."  Sheppard v. David Evans & Assoc., ---F.3d---, 2012 WL 3983909, at *2 n.2 (9th Cir. 2012).  However, "where plaintiff pleads a plausible prima facie case of discrimination, the plaintiff's complaint will be sufficient to survive a motion to dismiss."  Id.

[3] A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  Plaintiff has requested that the court take judicial notice of a copy of the Northstate University College of Pharmacy, LLC's online faculty roster listing.  (Docket No. 13.)  There are heightened difficulties in taking judicial notice of facts on a webpage, namely that anyone can say anything on one.  Webpages belonging to private corporations "'describing their own business, generally are not the sorts of 'sources whose accuracy cannot reasonably be questioned,' Fed. R. Evid. 201(b), that our judicial notice rule contemplates."  Victaulic Co. v. Tieman, 499 F.3d 227, 236 (3d Cir. 2007).  While certain webpages will undoubtedly satisfy Rule 201(b)(2), the court need not decide whether defendants' copy of its webpage does so because taking judicial notice of it will not affect the court's analysis or ruling.

9

Ninth Circuit has noted that a ten-year age difference would be considered substantial. Diaz v. Eagle Produce Ltd. P'ship, 521 F.3d 1201, 1209 (9th Cir. 2008) (citing approvingly Hartley v. Wis. Bell, Inc., 124 F.3d 887, 893 (7th Cir. 1997), which found a ten-year difference in ages to be presumptively substantial). As such, plaintiff's allegation that he was replaced by a thirty-six-year-old is sufficient to plead this element of an ADEA age discrimination claim.[4]

Plaintiff has also sufficiently pled the other elements of the prima facie case. The Ninth Circuit recently found that a plaintiff pled a "'plausible' prima facie case of age discrimination" when her allegations as to the job performance prong were, in their entirety, that her "performance was satisfactory or better" and that "she has received consistently good performance reviews." Sheppard, 2012 WL 3983909, at *3. Here, plaintiff alleges that he received an "outstanding" 2010 performance review and as a result "received a performance raise of almost [four percent]." (FAC ¶ 18.) He also alleges that he was "performing satisfactorily." (Id. ¶ 39.) Thus, plaintiff has plausibly alleged that he was performing his job satisfactorily at the time he was terminated. Plaintiff also alleged that he was discharged from his employment with the

---

[4] Review of a motion to dismiss under Rule 12(b)(6) "is generally limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which [the court] may take judicial notice." Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 989 (9th Cir. 2009). Defendant ignores the fundamental principles governing a motion to dismiss and asks the court to consider evidence outside the FAC that is intended to dispute plaintiff's allegations regarding his replacement at the College. (See Ruzicka Decl. (Docket No. 12-2) Ex. A).

10

College and that he is a member of a protected class. (FAC ¶¶ 14, 33.)  Plaintiff has therefore alleged a prima facie case of age discrimination.  Accordingly, the court will deny defendants' motion to dismiss plaintiff's first and second claims for age discrimination.

        B.    Retaliation Under the FCA (Claim Three)

The False Claims Act was enacted "with the purpose of [combating] widespread fraud by government contractors who were submitting inflated invoices and shipping faulty goods to the government."  United States ex rel. Hopper v. Anton, 91 F.3d 1261, 1265-66 (9th Cir. 1996).  To this end, the FCA creates liability for any person who, inter alia, conspires to or "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to an officer or employee of the United States.  31 U.S.C. § 3729(a)(1)(A), (C).

The FCA protects employees from being "discharged, demoted, . . . or in any other manner discriminated against in the terms and conditions of employment . . . because of lawful acts done by the employee . . . in furtherance of an [FCA] action . . . ."  31 U.S.C. § 3730(h).  "An FCA retaliation claim requires proof of three elements: '(1) the employee must have been engaging in conduct protected under the Act; (2) the employer must have known that the employee was engaging in such conduct; and (3) the employer must have discriminated against the employee because of her protected conduct.'"  United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1060 (9th Cir. 2011) (quoting Hopper, 91 F.3d at 1269).  Defendants argue that plaintiff was not engaging in conduct that was

11

protected under the FCA.

Section 3730(h) only protects employees who have acted "in furtherance of an action" under the FCA. Actions taken "in furtherance" include investigation for, initiation of, testimony for, or assistance in an action filed or to be filed, 31 U.S.C. § 3730(h), and the text is interpreted broadly by courts, McKenzie v. Bell S. Telecomm., Inc., 219 F.3d 508, 513-14 (6th Cir. 2000). "Specific awareness of the FCA is not required," but "the plaintiff must be investigating matters which are calculated, or reasonably could lead, to a viable FCA action." Hopper, 91 F.3d at 1269 (citing Neal v. Honeywell Inc., 33 F.3d 860, 864 (7th Cir. 1994)). The FCA creates liability for a person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," § 3729(a)(1)(A), or who "conspires to do so," § 3729(a)(1)(C). Here, plaintiff's allegations that College administrators encouraged students to make false statements to the government in order to receive loans that would be used to pay for the College's tuition suffice to show investigation into matters that "could lead[] to a viable FCA action."

"[A]n employee engages in protected activity where (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government." Moore v. Cal. Inst. of Tech. Jet Propulsion Lab., 275 F.3d 838, 845 (9th Cir. 2002). Most courts have found that internal reporting of wrongdoing, when it is not part of a plaintiff's job, qualifies as "protected activity" under the

FCA.[5]  In <u>Clemes v. Del Norte County Unified School District</u>, 843 F. Supp. 583, 596 (N.D. Cal. 1994), the court found that plaintiff sufficiently pled that he had engaged in "protected activity" when he alleged that he reported evidence of fraud against the government to his supervisors and other government officials.  <u>See also</u> <u>Robertson v. Bell Helicopter Textron, Inc.</u>, 32 F.3d 948, 951 (5th Cir. 1994) (finding internal reporting to be protected activity, although plaintiff's particular conduct was not protected because he did not characterized his concerns using the terms "illegal" or "unlawful"); <u>United States ex rel. Kent v. Aiello</u>, 836 F. Supp. 720, 723-24 (E.D. Cal. 1993) (holding that a plaintiff need not file a <u>qui tam</u> action to properly pled a FCA retaliation claim, but that protection extends to persons who "initiate, investigate, testify or who are

---

[5]  Although the Ninth Circuit has not explicitly stated whether to bring a claim under § 3730(h) a plaintiff must also file a <u>qui tam</u> action, it implicitly held that there is no such requirement in <u>Moore</u> when it reversed the district court's grant of summary judgment on plaintiff's § 3730(h) claim.  <u>See</u> <u>Moore</u>, 275 F.3d 838 at 848; <u>see also</u> <u>Sanches v. Crescent City</u>, No. Civ. 08-1395 MEJ, 2009 WL 650247, at *11 (N.D. Cal. Mar. 10, 2009) (noting the lack of Ninth Circuit authority on the issue, but finding that other courts have held that there is no prerequisite of filing a <u>qui tam</u> suit).  Even though Moore had not filed a <u>qui tam</u> action, the court held that there remained issues of fact as to whether "Moore's whistle blowing could have possibly resulted in a False Claims Act case."  <u>Moore</u>, 275 F.3d at 846.  Other circuits to have considered the issue have also rejected the requirement that plaintiff file a <u>qui tam</u> action to bring a FCA retaliation claim.  <u>See, e.g.</u>, <u>Hoyte v. Am. Nat'l Red Cross</u>, 439 F. Supp. 2d 38, 42 (D.D.C. 2006) ("To show that she was engaged in protected activity, i.e., acts 'in furtherance of' an FCA action, the employee does not need to have initiated a <u>qui tam</u> suit at the time of such acts, or even have contemplated initiating such a suit."); <u>Hutchins v. Wilentz, Goldman & Spitzer</u>, 253 F.3d 176, 188 (3d Cir. 2001)("Requiring an employee to actually file a <u>qui tam</u> suit would blunt the incentive to investigate and report activity that may lead to viable False Claims Act suits.").

13

otherwise involved in the filing of an action"); Neal v. Honeywell, Inc., 826 F. Supp. 266, 269 (N.D. Ill. 1993), aff'd sub nom. Neal v. Honeywell Inc., 33 F.3d 860 (7th Cir. 1994) (holding, on a motion to dismiss, that plaintiff's intracorporate complaints about fraud against the government were sufficient to state a retaliation claim under § 3730(h)).

Other courts, however, have required more than reporting. For example, in Zahodnick v. International Business Machines Corp., 135 F.3d 911, 914 (4th Cir. 1997), the Fourth Circuit affirmed the district court's grant of summary judgment on plaintiff's FCA retaliation claim where the plaintiff only reported his concern of mischarging the government to his supervisor. Id. The court found no evidence that the plaintiff had "initiated, testified for, or assisted in the filing of a qui tam action during his employment." Id.

For the purposes of this motion, it is unnecessary to delineate the exact reach of "protected activity" under § 3730(h) because plaintiff pleads enough facts to state a "plausible" claim for relief under § 3730(h) with his allegations that he reported to the administration that the College was committing fraud that could result in civil and criminal sanctions.[6]  In

---

[6] "The Court does not ignore the prior allegations in determining the plausibility of the current pleadings." Stanislaus Food Prods. Co. v. USS-POSCO Indus., 782 F. Supp. 2d 1059, 1075 (E.D. Cal. 2011). However, a plaintiff may plead inconsistent or even contradictory allegations. PAE Gov't Servs., Inc. v. MPRI, Inc., 514 F.3d 856, 860 (9th Cir. 2007). Even if plaintiff's allegations regarding his reasons for reporting the College's tuition practices are construed as inconsistent, the court finds that he has pled sufficient additional facts to render his claim of retaliation plausible. Cf. Stanislaus Food Prods. Co., 782 F. Supp. 2d at 1076 (requiring plaintiff who pled inconsistent allegations to allege

14

other words, plaintiff has pled sufficient facts to suggest that he could prove that he in good faith believed, and an employee in the same or similar circumstances might believe, that the College was possibly committing fraud against the government. Moore, 275 F.3d at 845 (9th Cir. 2002).

Plaintiff also alleges that he brought evidence of fraud against the government to the attention of the Dean, "repeatedly and emphatically," (FAC ¶ 21), and that he was fired because of that reporting, see U.S. ex rel. Yesudian v. Howard Univ., 153 F.3d 731, 736 (D.C. Cir. 1998) (to establish that plaintiff was discriminated against "because of" protected activity, he must show that "(a) 'the employer had knowledge the employee was engaged in protected activity'; and (b) 'the retaliation was motivated, at least in part, by the employee's engaging in [that] protected activity.'" (quoting S. Rep. No. 99-345, at 35, reprinted in 1986 U.S.C.C.A.N. at 5300)). Plaintiff has therefore pled a plausible claim of unlawful retaliation under § 3730(h). Accordingly, defendants' motion to dismiss plaintiff's FCA retaliation claim must be denied.

C. Wrongful Termination

In order to prevail on a claim of wrongful termination, plaintiff must prove he was fired because he engaged in conduct protected by public policy that was 1) fundamental, 2) firmly established, 3) beneficial to the public, and 4) embodied in a constitutional or statutory provision. Cramer v. Consol. Freightways, Inc., 209 F.3d 1122, 1134 (9th Cir. 2000) (citing

---

more factual support before finding a plausible claim for relief).

1 | Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238, 1256 (1994)).
2 |      Age discrimination in violation of FEHA can form the
3 | basis of a common law wrongful discharge claim.[7]  Stevenson v.
4 | Superior Court, 16 Cal. 4th 880, 897 (1997).  Plaintiff has
5 | alleged that he was discharged in violation of public policy
6 | under both state and federal law because he was discharged on
7 | account of his age and for investigation and reporting of fraud.
8 | Therefore, plaintiff has stated sufficient allegations to sustain
9 | this cause of action and defendants' motion to dismiss this claim
10 | will be denied.
11 |      IT IS THEREFORE ORDERED that defendants' motion to
12 | dismiss be, and the same hereby is, DENIED.
13 | DATED:    October 23, 2012

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[7] As the parties do not address whether violation of the ADEA or FCA may also serve as a basis for a wrongful discharge claim, the court does not decide that question.

16